M. H. HONEYCUTT, EMPLOYEE, v. CAROLINA ASBESTOS COMPANY AND/OR UNION ASBESTOS & RUBBER COMPANY, EMPLOYER; AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, CARRIER.

(Filed 30 April, 1952.)

**1. Master and Servant § 40f—**

In making occupational diseases compensable under the Workmen's Compensation Act, the General Assembly, in recognition of the difference between the manner in which disability is brought about by an occupational disease and by an ordinary accident, has set up different tests of disability which the courts must observe.

**2. Same—**

In cases of asbestosis and silicosis the legislative test of disability is the incapacity of an employee to perform normal labor in the last occupation in which remuneratively employed, G.S. 97-54, G.S. 97-55, while in all other cases the test is the incapacity of the employee to earn the wages he was receiving in the same or any other employment. G.S. 97-2 (i).

**3. Same—**

Where an employee in an asbestos plant becomes disabled by reason of asbestosis from performing normal labor in his occupation, as distinguished from being merely affected by asbestosis and subject to rehabilitation, G.S. 97-61, such employee has suffered disablement as defined by G.S. 97-54, and this result is not affected by the fact that the employee thereafter actually earns more money in another employment than he was earning at the time the existence of his disability was determined.

**4. Master and Servant § 53b (1)—**

Claimant was employed by one company as foreman in its asbestos plant for thirty-seven weeks during the fifty-two weeks immediately preceding the date he became disabled from asbestosis. The plant was bought by

another company and claimant was employed by the new owner at much smaller wages for the last ten weeks of his employment. *Held:* The Industrial Commission properly took into consideration defendant's wages during the entire fifty-two weeks in determining the amount of compensation. G.S. 92-2 (e).

APPEAL by defendants, Carolina Asbestos Company and American Mutual Liability Insurance Company, from *Patton, Special Judge,* October Term, 1951, of MECKLENBURG.

This is a proceeding brought by M. H. Honeycutt, employee, for compensation under the provisions of the North Carolina Workmen's Compensation Act, for disability due to asbestosis.

The first hearing in this proceeding was before Commissioner Robert L. Scott at Charlotte, North Carolina, on 24 April, 1951, upon the testimony of the plaintiff and Dr. Otto J. Swisher, Director of Industrial Hygiene of the State of North Carolina, an admitted medical expert, together with certain documentary evidence, and the testimony of the defendants' witness, Dr. T. Preston White, admitted to be a medical expert, specializing in internal medicine including diseases of the lung.

At the hearing, counsel for the respective parties entered the following stipulations: (1) The plaintiff, M. H. Honeycutt, was employed by Carolina Asbestos Company from 21 May, 1950, through 27 July, 1950; that during this time the plaintiff worked between 50 and 55 days. (2) That all parties are subject to and bound by the Workmen's Compensation Act; that American Mutual Liability Insurance Company was the insurance carrier for Carolina Asbestos Company during the above period and was also the carrier for Union Asbestos & Rubber Company for more than a year prior to 17 April, 1950. (3) That the average weekly wage of the plaintiff for the period of employment by Union Asbestos & Rubber Company was $53.52, and for the period of employment by Carolina Asbestos Company was $36.80. (4) That the plaintiff was exposed to asbestos dust in North Carolina for two years within the past ten years in the course of his employment; that the plaintiff was exposed to asbestos dust for as much as thirty working days or parts thereof within seven consecutive calendar months while employed by Union Asbestos & Rubber Company and also while employed by Carolina Asbestos Company. (5) That the plaintiff was first advised by competent medical authority that he had asbestosis on 5 August, 1950; that the plaintiff has asbestosis and filed claim for compensation against both Union Asbestos & Rubber Company and Carolina Asbestos Company on 14 November, 1950. (6) That the plant where the plaintiff worked was owned and operated by Union Asbestos & Rubber Company prior to 16 April, 1950, and was owned and operated by Carolina Asbestos Company thereafter.

It appears from the evidence that the plaintiff worked in the asbestos plant now owned by the Carolina Asbestos Company, for approximately seventeen years, and during that period was exposed to the hazards of asbestos dust; that he was first examined by the Division of Industrial Hygiene of the North Carolina State Board of Health, on 20 December, 1935. This examination revealed him to have a chest expansion of 3 inches and all other findings were essentially negative. He was re-examined on 18 April, 1939, and was found to have a chest expansion of 3½ inches and all other findings were essentially negative. An examination on 13 May, 1941, revealed a chest expansion of 3 inches and other findings essentially negative. On 9 September, 1943, examination revealed him to have a chest expansion of 2½ inches and some scarring in his lungs. Although issuance of his work card was delayed, it was finally issued after a short period of time and he was advised by letter as follows: "We find that you have some scarring in your lungs. However, we feel that the amount of scarring found is about what one might expect over that period of time."

Plaintiff was again examined on 7 July, 1947, which revealed a chest expansion of 2 inches and X-ray film revealed asbestosis late in the first stage. It does not appear that any further notice was given the plaintiff at this time and he was issued the usual work card.

On 17 April, 1950, and again on 29 June, 1950, the plaintiff was re-examined. The X-ray diagnosis was again that of asbestosis in the first stage with slight progression since the previous film, accompanied by admitted physical symptoms, including shortness of breath for one year or more, strength and energy weak, appetite poor, loss of weight, and vomiting with coughing. Chest expansion of 1 inch was found accompanied by bowing of the nails.

Based upon these two latter examinations, the plaintiff was advised on 5 August, 1950, by letter dated 28 July, 1950, from the Division of Industrial Hygiene that he had asbestosis and that the Advisory Medical Committee had recommended that he discontinue further employment in any place where exposed to a dust hazard. This letter also contained the following statement: "Therefore, we are unable to issue you the usual work card for any future employment in said dust hazards."

After receiving this letter, the plaintiff obtained a job with the Town of Davidson as a policeman beginning in August, 1950. He is on duty 7 days a week, 12 hours a day, working the 7:00 p.m. to 7:00 a.m. shift one month and the 7:00 a.m. to 7:00 p.m. shift the next in alternating months, and earns $114.00 for 15 days' work. The plaintiff testified that he now feels worse than he did a year ago, that he is still short of breath; that he still coughs until he vomits; that he has to sit up nights to prevent coughing; that he does not feel like working but he has to work in order

to live; that he has had to miss some days because he was too sick to work; that he now weighs about 150 pounds and has gained a few pounds since he left the asbestos plant. If he does a good job as policeman he is required to walk two or three hours a day.

Dr. Swisher testified that based upon his examinations of 17 April and 29 June, 1950, he was of the opinion that at that time the plaintiff was actually incapacitated by reason of asbestosis from performing normal labor in the asbestos plant operated by the defendant. "This man is either late in the first stage or on the threshold of the second stage of asbestosis. It could be a borderline case, the second stage." In 1950, chest expansion was 1 inch with bowed nails. There has been a steady increase in blood pressure from 118/80 on the first examination recorded on 20 December, 1935, to 170/90 at the time of his last examination in 1950.

Dr. T. Preston White, witness for the defendants, testified that he examined the plaintiff on 12 February, 1951, and diagnosed his condition as that of moderately advanced asbestosis; that in his opinion the plaintiff should not work in an employment exposing him to asbestos dust. He further testified that any work done by the plaintiff should be light work requiring very little physical activity and, in his opinion, the plaintiff probably should not be doing the work which he was doing as a policeman. "That's a long stretch of work, twelve hour duty, with moderately advanced asbestosis, in a man 50 years of age." He also testified that plaintiff's examination disclosed a blood pressure of 158/110.

Plaintiff is 50 years old and his wife and 16 year old son are dependent upon him for their support. He owns no property and has only a seventh grade education. He has had no training in any occupation outside of the asbestos industry except the experience he has gained as a policeman since August, 1950.

The Commission found as a fact that there is no reasonable basis upon which to conclude that the plaintiff possesses the actual or potential capacity of body or mind to work with substantial regularity during the foreseeable future in any gainful occupation free from the hazards of asbestos without injury and detriment to his physical condition.

Upon the stipulations entered and the facts found, the Commissioner dismissed the action against the defendant, Union Asbestos & Rubber Company, and awarded the plaintiff compensation against the appellants at the rate of $24.00 per week during 400 weeks, beginning 27 July, 1950, provided, however, that the total compensation shall not exceed $6,000.

Defendants appealed to the Full Commission, which affirmed the award of the hearing Commissioner. On appeal to the Superior Court, his Honor affirmed the award of the Commission. The defendants appealed to the Supreme Court, assigning error.

*Helms & Mulliss and James B. McMillan for defendants, appellants.*
*Shannonhouse, Bell & Horn for plaintiff, appellee.*

DENNY, J.   The principal question involved in this appeal is whether an employee who is disabled and incapacitated as the result of asbestosis from performing normal labor in the last occupation in which remuneratively employed is entitled to compensation for total disability under the provisions of our Workmen's Compensation Act.

The appellants take the position that the plaintiff is not totally disabled within the meaning of the Workmen's Compensation Act, since he is earning more wages as a policeman than he earned as an asbestos worker.   They are relying on the case of *Branham v. Panel Company,* 223 N.C. 233, 25 S.E. 2d 865, and similar decisions, in support of their position.   In the *Branham case,* the plaintiff was found to have 33⅓ per cent or more general partial disability under G.S. 97-30, and had been tendered and had accepted employment suitable to his capacity as provided for in G.S. 97-32.   His employer did not reduce his wages.   The Industrial Commission awarded the claimant compensation at the rate of 60 per cent of the difference between the wages he was earning before the accident and the wages he was able to earn after the accident "any time it is shown that the claimant is earning less due to his injury by accident within 300 weeks from the date of the accident."   Branham appealed from this award contending he was unable to earn his wages.   *Barnhill, J.,* in speaking for this Court, said: ". . . the capacity to earn wages, is the test of earning capacity, or, to state it differently, the diminution of the power or capacity to earn is the measure of compensability.   It follows that, as the claimant is now earning wages in an amount equal to those received by him prior to his injury, he has failed to show any compensable injury or incapacity.   However urgently he may insist that he is 'not able to earn' his wages, the fact remains that he is receiving now the same wages he earned before his injury.   That fact cannot be overcome by any amount of argument.   It stands as an unassailable answer to any suggestion that he has suffered any loss of wages within the meaning of the Act."

It must be kept in mind that the above case involved a claim based on disability as defined in G.S. 97-2 (i).   This section defines "disability" to mean "incapacity because of injury *to earn the wages which the employee was receiving at the time of injury in the same or any other employment."*

The general provisions of our Workmen's Compensation Act were originally enacted for the purpose of providing compensation for industrial accidents only.   The provisions with respect to occupational diseases were enacted later.   And while occupational diseases, as well as

ordinary industrial accidents, are now recognized as a proper expense of industry, the manner in which disability is brought about by an occupational disease is so inherently different from an ordinary accident, it is sometimes difficult to administer the law with respect to such disease under machinery adopted for the purpose of administering claims growing out of ordinary accidents. *Wisconsin Granite Co. v. Industrial Com.,* 208 Wis. 270, 242 N.W. 191. In such circumstances it becomes the duty of the courts to give effect to obvious legislative intent. *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410.

It is clear that "disability" resulting from asbestosis and silicosis, as defined in G.S. 97-54, is not synonymous with its meaning as defined in G.S. 97-2 (i). "The term 'disablement' as used in this article as applied to cases of asbestosis and silicosis means *the event of becoming actually incapacitated, because of such occupational disease, from performing normal labor in the last occupation in which remuneratively employed; but in all other cases of occupational disease shall be equivalent to 'disability' as defined in section 97-2 paragraph (i)."* G.S. 97-54. *"The term 'disability' as used in this article means the state of being incapacitated as the term is used in defining 'disablement' in section 97-54."* G.S. 97-55.

In the enactment of the above definitions, we construe the legislative intent to be simply this: In all cases involving industrial accidents and occupational diseases, *except asbestosis and silicosis,* "disability" means the *incapacity to earn wages which the employee was receiving at the time of his injury in the same or any other employment.* But "disability" *resulting from asbestosis or silicosis means the event of becoming actually incapacitated from performing normal labor in the last occupation in which remuneratively employed.*

The appellants concede the evidence in this case supports the finding of "disablement" within the meaning of G.S. 97-54. However, they contend that such "disablement," when found, is subject to the same test with respect to earning capacity as that laid down in *Dail v. Kellex Corp.,* 233 N.C. 446, 64 S.E. 2d 438; *Branham v. Panel Company, supra;* and *Smith v. Swift & Co.,* 212 N.C. 608, 194 S.E. 106. In this we do not concur. We think that when an employee becomes incapacitated to work as the result of having developed asbestosis or silicosis, as defined in G.S. 97-54, it was the legislative intent that he should be compensated as for total disability in accord with the provisions of our Workmen's Compensation Act. Otherwise, the provisions of G.S. 97-54 are meaningless.

We think the distinction made by the Legislature between asbestosis and silicosis, and other occupational diseases, is significant. An employee does not contract or develop asbestosis or silicosis in a few weeks or months. These diseases develop as the result of exposure for many years

to asbestos dust or dust of silica. Both diseases, according to the text-book writers, are incurable and usually result in total permanent disability. The average exposure to asbestos dust before the appearance of the disease is 13.5 years. Attorneys' Textbook on Medicine (3rd Ed.) by Gray, page 1418.

Therefore, it would seem that the victims of these incurable occupational diseases constitute a legitimate burden on the industries in which they were exposed to the hazards that produced their disablement. In our opinion, such was the intent of the Legislature. No provision was made for their rehabilitation. Rehabilitation is available only to an employee found by the Industrial Commission to be affected by asbestosis or silicosis but not actually disabled thereby. G.S. 97-61. However, if in the process of rehabilitation, or thereafter, an employee becomes disabled from asbestosis or silicosis as defined in G.S. 97-54, within two years of his last exposure to the hazards of asbestosis or silicosis, he would be entitled to ordinary compensation under the general provisions of our Workmen's Compensation Act. G.S. 97-61; *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797.

The plaintiff should not be penalized because during the time the defendants contest his claim, he has chosen to make his "heart and nerve and sinew serve their turn long after they are gone," rather than apply for public relief as so many are doing these days.

The appellants also except to the finding of the Commission with respect to the "Average Weekly Wage" of the plaintiff. They take the position that the only wage earned by the plaintiff while employed by the defendant, Carolina Asbestos Company, was $36.80 a week as a twister hand. They contend that the Industrial Commission had no right, under the provisions of G.S. 97-2 (e), to take into consideration the $53.52 a week the plaintiff earned as a foreman in the plant for 37 weeks during the 52 weeks immediately preceding the date of his determined disability, and while in the employment of Union Asbestos & Rubber Company.

An examination of the record discloses that the Commission determined the average weekly wage of the plaintiff in the exact manner provided by statute, if the change in the ownership of the plant be disregarded. In our opinion, the formula used by the Commission for arriving at the average weekly wage of the plaintiff was not only permissible under the statute, but a proper one in this case. To have limited the average weekly wage of the plaintiff to that earned during the last ten weeks of his employment, would have been unfair to the plaintiff under the facts and circumstances disclosed by the record in this case. And this is true whether the reduction in wages was the result of the plaintiff's impaired physical ability or resulted from the change in ownership of the plant.

The judgment of the court below is, in all respects,
Affirmed.