RUTH GARDNER SELF, NEXT FRIEND OF T. BRYANT SELF, DECEASED EMPLOYEE v. STARR-DAVIS COMPANY, EMPLOYER; STANDARD FIRE INSURANCE COMPANY, CARRIER; ARMSTRONG SUPPLY CORPORATION, EMPLOYER; STANDARD FIRE INSURANCE COMPANY, CARRIER; C. E. THURSTON & SONS, INC., EMPLOYER; LIBERTY MUTUAL INSURANCE COMPANY, CARRIER; SPRINKMAN & SONS CONSTRUCTION CO., EMPLOYER; EMPLOYERS MUTUAL LIABILITY INS. COMPANY, CARRIER

No. 7218IC65

(Filed 29 March 1972)

Master and Servant § 68— workmen's compensation — asbestosis — acceleration of death caused by tumor

　　The Industrial Commission was correct in finding that death resulted from asbestosis within the meaning of [former] G.S. 97-61.6 based on evidence that asbestosis accelerated and contributed to the death but that the immediate or primary cause of death was an unrelated brain tumor.

APPEAL by defendants Starr-Davis Company and Standard Fire Insurance Company from the Order of the North Carolina Industrial Commission dated June 9, 1971.

This claim was brought before the Industrial Commission by Ruth Gardner Self seeking compensation for the death of her husband, T. Bryant Self.

T. Bryant Self was employed by defendant Starr-Davis from 1946 until 21 July 1968. His duties involved, among other things, the installation of insulating material containing asbestos.

During the period 5 August 1968 through 6 September 1968 Self was employed by Armstrong Supply Corporation. From 9 September 1968 through 19 November 1968 he was employed by C. E. Thurston and Sons, Inc. From 21 November 1968 through 11 December 1968, Self was employed by Sprinkman and Sons Construction Company.

Approximately five years before his death Mr. Self began to have coughing spells. The coughing persisted. In July of 1968 Mr. Self consulted a doctor about his cough. The doctor made a preliminary diagnosis of asbestosis and referred Mr. Self to the Western North Carolina Sanatorium in Black Mountain, North Carolina, where there was a diagnosis of pulmonary asbestosis, Grade II. Mr. Self was found to be 50% disabled. The North Carolina State Board of Health reported this diagnosis to the Industrial Commission on 31 December 1968.

In January 1969 Mr. Self began complaining of severe headaches and his doctor referred him on 18 January 1969 to a neurosurgeon who diagnosed a brain tumor. Mr. Self was operated on for removal of the tumor on 21 January 1969. Microscopic examination revealed the tumor to be a "glioblastoma multiforme, which is the most malignant brain tumor which exists." The prognosis was that Mr. Self had from three to six months to live. There was no relation between the tumor and the asbestosis according to all of the evidence.

Mr. Self improved for several days following the operation then began to show signs of pulmonary insufficiency, lung congestion and pneumonitis. His condition deteriorated and more pulmonary congestion developed. Mr. Self ultimately died on 10 February 1969, less than one month from the operation, and without ever making any claim for asbestosis.

This claim was brought seeking compensation under the Workmen's Compensation Act for the death of Mr. Self. The

Hearing Commissioner found that Mr. Self's death "was accelerated and contributed to by his asbestosis, and his death thus resulted from his asbestosis" and that his dependents were entitled to compensation from the appealing defendants only. The other defendants were dismissed as parties. The Full Commission affirmed the findings of fact and conclusions of law made by the Hearing Commissioner with a minor exception not involved in this appeal.

From the order of the Industrial Commission, the defendants appeal.

*Hayworth, Winfree & Marks by Herman Winfree for plaintiff appellees.*

*Smith, Moore, Smith, Schell & Hunter by Bynum M. Hunter and David M. Moore II for defendant appellants.*

CAMPBELL, Judge.

The defendants by appropriate assignments of error challenge the Commission's findings of fact and conclusions of law holding that plaintiff is entitled to compensation under the Workmen's Compensation Act for the death of Mr. Self.

The defendants contend that the evidence in this case does not support a finding that Mr. Self's death is compensable under the occupational disease provisions of the Workmen's Compensation Act.

At the hearing there was expert medical testimony to support the following, unexcepted to, findings:

"16. It was Dr. Ames' opinion that deceased's asbestosis made him more susceptible to pneumonia. It was further Dr. Ames' opinion that had it not been for the asbestosis and the lung complications deceased would have recovered from the surgery, would have been discharged from the hospital, and would have lived for a period of perhaps three or six months before death would have resulted from the tumor.

17. It was Dr. Ames' opinion that the immediate or primary cause of death was the malignant tumor and that deceased's pulmonary asbestosis contributed to his death."

There was testimony that Mr. Self would not have died when he did but for the asbestosis and also that he would not have died when he did but for the brain tumor. It was established that there was no causal relation between the asbestosis and the brain tumor.

There was testimony that the brain tumor was the primary cause of death. The death certificate on Mr. Self listed a malignant brain tumor as the immediate or primary cause of death, and contributing to the death but not related to the cause was pulmonary asbestosis.

The question presented is whether under the North Carolina Workmen's Compensation Act compensation for death is proper where the evidence establishes "that the immediate or primary cause of death was the malignant tumor" and that asbestosis accelerated and contributed to the death but there was no causal relation between the tumor and the asbestosis. Stated another way, was the Commission correct in finding and holding that "death resulted from asbestosis within two years from the date of his last exposure to the hazards of asbestosis" based on evidence that asbestosis accelerated and contributed to the death but was not the immediate or the primary cause?

The North Carolina Workmen's Compensation Act makes special provision for employees exposed to the hazards of silicosis and asbestosis. G.S. 97-54 through 97-76. These provisions were enacted by the General Assembly in recognition of the peculiar nature of these diseases. *Honeycutt v. Asbestos Co.,* 235 N.C. 471, 70 S.E. 2d 426 (1952).

The particular statute involved in this case is G.S. 97-61.6. A review of this statute reveals that the pertinent part prior to 1965 read:

> "Provided, however, should death result from asbestosis or silicosis within two years from the date of last exposure, or should death result within 350 weeks from the date of last exposure and while the employee is entitled to compensation for disablement due to asbestosis or silicosis, either partial or total, then in either of these events, the employer shall pay, . . . "

This provision of the statute was construed in *Davis v. Granite Corporation,* 259 N.C. 672, 131 S.E. 2d 335 (1963).

In the *Davis* case the employee had silicosis and was drawing compensation when he died of a heart disease. There was evidence to support a finding of fact that death was not caused by or related to silicosis. It was contended that no death benefits were payable because the death "was not caused by or related to silicosis." The Court held that the statute provided two conditions under which death benefits were payable. The first condition did not apply for the employee did not die of silicosis within two years of the date of his last exposure. The second condition did apply because he died within 350 weeks from the date of his last exposure and while drawing compensation for disability due to silicosis. The Court held that under the second condition there is no requirement that death result from silicosis. The Court went on to point out that the first condition was a general provision in keeping with the general purposes and provisions of the compensation act which makes compensable a death resulting from an incident arising out of and in the course of employment. The second provision, however, was deemed to be a special or particular provision, and therefore an exception to the general provision in keeping with the intention of the General Assembly. An award was upheld.

Following the *Davis* decision the statute was amended in 1965 to read:

"Provided, however, should death result from asbestosis or silicosis within two years from the date of last exposure, or should death result from asbestosis or silicosis, or from a secondary infection or diseases developing from asbestosis or silicosis within 350 weeks from the date of last exposure and while the employee is entitled to compensation for disablement due to asbestosis or silicosis, either partial or total, then in either of these events, the employer shall pay. . . . "

This was the statute as it existed at the time the instant case arose. By the amendment of 1965 the General Assembly indicated its intention to overrule the *Davis* decision and to allow death benefits from occupational diseases of asbestosis or silicosis only when death was related thereto so that the general purposes and provisions of the Compensation Act would be paramount and a compensable death would be a death resulting from this occupational disease arising out of and in the course of employment. There would no longer be a special or particular

provision which would constitute an exception to a general provision.

We thus come back to the proposition as to what is meant by "death resulting from asbestosis." Does this mean that death must result solely and independently from all other causes from asbestosis or will a compensable death occur when the job-related asbestosis only accelerates and contributes to the death but is not the immediate or primary cause?

If we carry this idea alluded to in the *Davis* case one step further and treat asbestosis as being comparable to an injury arising out of and in the course of employment, how have the cases treated the injury situations where the injury was not the sole or direct cause of death but only accelerated and contributed to the death?

In the case of *Wyatt v. Sharp*, 239 N.C. 655, 80 S.E. 2d 762 (1954), the employee had a heart condition. While working as a carpenter on a scaffold, the scaffold fell so that the employee fell about six feet landing in a sitting position on a pile of dirt. It was found "that the shock and trauma of the fall . . . aggravated and accelerated the pre-existing heart condition so as to hasten the acute failure of the heart which occurred approximately 36 hours after the fall and which ultimately resulted in the death." A recovery was allowed.

The *Wyatt* case and other authorities indicate that injuries arising out of and in the course of employment which only accelerate and contribute to death caused primarily from non-related physical conditions nevertheless are compensable under the Workmen's Compensation Act. 100 C.J.S., Workmen's Compensation, § 521. 1 Larson's, Workmen's Compensation Law, § 12.20, pages 192.23 to 192.49.

While it is true that in the instant case the asbestosis did not aggravate the tumor and had no relation whatsoever to the tumor, nevertheless, it is the death which was accelerated and contributed to by the asbestosis, and this is the criterion rather than whether the tumor itself was aggravated and accelerated by the asbestosis.

We, therefore, conclude that the Commission reached the correct result. We feel strengthened in this conclusion that we are following the intention of the General Assembly by the fact

that in 1971 G.S. 97-61.6 was further amended by the addition of another proviso reading:

> "Provided further that if the employee has asbestosis or silicosis and dies from any other cause, the employer shall pay, . . . "

Affirmed.

Judges BRITT and GRAHAM concur.