The ultimate issues in this case were resolved by the hearing Deputy, on conflicting evidence capable of supporting either party, with benefit of first hand observation of the plaintiff's testimony. In light of all the evidence, this review is decided in accordance with his findings of fact. In the Commission's discretion, plaintiff's motions for attorney's fees pursuant to N.C.G.S. §§ 97-88 and 97-88.1 are DENIED.
Following oral argument before the Commission, the parties stipulated to the wage sums stated in Findings of Fact 13.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 37 years old, with a date of birth of 4 September 1956. For her education plaintiff had completed high school and had training in Geriatric Nursing and emergency medical techniques. Plaintiff was a licensed Emergency Medical Technician. For her work history plaintiff had worked in a nursing home, had worked in home health care, and had done clerical work. Plaintiff began working for defendant, a veterinary office, in September or October 1992. Her job with defendant included washing dogs.
2. On 26 July 1993 a dog became unruly in the tub while plaintiff was washing it. While restraining the dog, plaintiff slipped and fell, injuring her right knee. This incident was an interruption of plaintiff's regular work routine by unusual circumstances likely to result in unexpected consequences.
3. Plaintiff reported the accident to a co-worker immediately after it occurred and reported it to Dr. Cronogue when the doctor arrived at the office that morning. The co-worker, Ms. Ulrich, was nearby at the time of the accident. Although Ms. Ulrich did not see the actual event, she heard plaintiff cry out.
4. Plaintiff returned to work the next day, but left early. Plaintiff has not been employed by defendant since 27 July 1993.
5. On 28 July 1993 plaintiff telephoned her family doctor and was referred to Chesapeake General Hospital. At the hospital x-rays were taken, and plaintiff's leg was immobilized. Plaintiff was referred to Dr. Samuel Brown, an orthopedic surgeon.
6. Instead of going to Dr. Brown, plaintiff went to Dr. A. Jamali. The first examination by Dr. Jamali was on 2 August 1993, about one week after the accident at work. Dr. Jamali ordered an MRI. At the time of the MRI, plaintiff suffered from a tear of the medial and lateral meniscus and internal derangement of the right knee. This condition of her right knee was caused by the accident at work on 26 July 1993.
7. A dispute arose between the plaintiff and insurance carrier because plaintiff refused to give a recorded statement. After a delay of about one month, plaintiff gave her statement on 2 September 1993. The statement plaintiff gave was not inconsistent with her testimony nor the description of the accident to her doctors.
8. On 11 August 1993 Dr. Jamali performed surgery on plaintiff's right knee. At this time, in addition to the above-noted condition of her right knee, there was an osteochondral fracture of the right knee which was caused by the accident of 26 July 1993 at work. The fracture was a condition in which the cartilage of the knee had pulled away from the bone.
9. Following surgery, plaintiff developed phlebitis and deep vein thrombosis in the right leg. These conditions were caused by the accident of 26 July 1993 at work. In addition, plaintiff developed symptoms of reflex sympathetic dystrophy, but this condition was largely resolved by August 1994 when plaintiff was examined by Dr. Stanford Langley, an orthopedic surgeon.
10. The treatment plaintiff has received for her right knee, including phlebitis and the deep-vein thrombosis, was made necessary, as a result of the accident of 26 July 1993 at work, in order to effect a cure, to provide relief, and reduce her period of disability.
11. Plaintiff retains a 50 percent permanent partial impairment to the use of her right leg. Although Dr. Jamali was of the opinion that plaintiff retained a 100 percent permanent partial impairment to her right leg, this finding is based on the opinion of Dr. Langley, and on the fact that plaintiff retains considerable use of her right leg, including the ability to occasionally walk without a limp or a leg brace.
12. As of 25 February 1994, about seven months after the accident at work, plaintiff had reached maximum medical improvement, in that her condition became stable and the healing period ended. Since 25 February 1994 plaintiff has been capable of returning to work with restrictions of not standing or sitting continuously, and limited bending, twisting or squatting.
13. As a result of the injury of 26 July 1993 at work, and plaintiff's residual impairment, from 27 July 1993 and continuing through the date of the hearing before the Deputy Commissioner, 29 August 1994, plaintiff has been unable to perform her regular job with defendant, and with the exceptions noted herein, has not been capable of obtaining and successfully performing gainful employment. After 27 July 1993, plaintiff worked for two days and earned $89.06 as a phlebotomist at Albemarle Hospital, and worked about two weeks as a telemarketer, earning $1,189.23. She was unable to continue in these employments, or continue a course of study at a community college, as a result of pain due to the subject injury.
14. On 26 July 1993 plaintiff's average weekly wage was $353.60 per week.
*****************
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On 26 July 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2 (6).
2. Plaintiff's average weekly wage was $353.60 per week, yielding a compensation rate of $235.74 per week. N.C.G.S. § 97-2
(5).
3. Plaintiff is entitled to the payment of temporary total disability compensation in the amount of $235.74 per week for the period from 27 July 1993 through 29 August 1994, and continuing during total disability resulting from the subject injury, subject to a credit for periods plaintiff worked during this time. N.C.G.S. § 97-29; Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,477, 70 S.E.2d 426(1952).
4. Plaintiff is entitled to the payment of all medical compensation reasonably necessary as a result of the injury by accident of 26 July 1993. N.C.G.S. §§ 97-25; 97-2(19).
****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation in the amount of $235.74 per week for the period from 27 July 1993 through 29 August 1994, and continuing until she returns to work or further orders of the Industrial Commission, less 2 2/7 weeks of benefits due to periods plaintiff earned wages in excess of pre-injury average weekly wages, subject to an attorney's fee as provided below. As much of said amount as has accrued shall be paid in a lump sum.
2. Defendants shall pay for all medical compensation which has been or may be required as a result of the injury by accident of 26 July 1993.
3. An attorney's fee in the amount of one-third of all compensation due plaintiff is hereby approved for the three law firms which have represented plaintiff in this case. Said amount shall be paid by forwarding a single check to Dennis C. Rose, Esq. made payable to Mr. Rose and the two law firms that have previously represented plaintiff, who shall divide this sum as they may agree or by court order. Eller v. J S Truck Services,Inc., 100 N.C. App. 545, 397 S.E.2d 242(1990), cert. den., 328 N.C. 271,400 S.E.2d 451(1991). An attorney's fee in the amount of 25 percent of all future compensation due plaintiff is hereby approved for plaintiff's current attorney, Dennis D. Rose, Esq., and every fourth compensation check shall be paid directly to him or his firm.
4. Plaintiff's motion to assess attorney's fees against defendants is DENIED.
5. Defendants shall pay all costs, including expert witness fees of $500.00 to Dr. Jamali, $300.00 to Dr. Cronogue, and $500.00 to Dr. Langley.
 S/ _________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md 6/9/96; 7/12/97