***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has shown good grounds to reconsider the evidence and amend the Opinion and Award; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An Employer/employee relationship existed between Plaintiff and Defendants as follows:
 Carolina Throwing Company from April 1973 until March 1976.
 Spectrum Dyed Yarns, Inc. from April 1976 until December 1978.
3. Wausau Insurance Company and The Travelers provided workers' compensation coverage for Carolina Throwing Company. Employers Insurance of Wausau provided workers' compensation coverage during Plaintiff's employment with Spectrum Dyed Yarns.
4. The medical records of Dr. Allen Hayes, Dr. Douglas Kelling, Dr. Steven Dikman, Dr. Ralph Christy, Northeast Medical Center and Dr. James Haswell are stipulated into evidence.
5. The following documents are stipulated into evidence:
 Spectrum Dyed Yarns, Inc.'s Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents.
 Spectrum Dyed Yarns, Inc.'s Responses to Plaintiff's Second Request for Production of Documents.
 Spectrum Dyed Yarns, Inc.'s Responses to Plaintiff's Third Request for Production of Documents.
 Spectrum Dyed Yarns, Inc.'s Supplemental Responses to Plaintiff's Third Request for Production of Documents.
 Carolina Throwing and Wausau's Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents.
 Plaintiff's Answers to Spectrum Dyed Yarns, Inc.'s First Set of Interrogatories and Request for Production of Documents.
 Plaintiff's Answers to Carolina Throwing Company and Wausau's First Set of Interrogatories and Request for Production of Documents.
Cooper Environmental, Inc.'s survey documents.
Asbestos abatement records.
Social Security Disability file.
Plaintiff's social security earnings records.
6. Plaintiff contends the issues listed herein are the sole issues for determination by the Full Commission in the above captioned matter:
 Did the Plaintiff contract the occupational disease asbestosis?
 If so, when was the Plaintiff last injuriously exposed to the hazards of asbestos?
What, if any, compensation is the Plaintiff entitled to?
Is Defendant defending this claim without reasonable grounds?
 If so, what, if any, compensation for attorney's fees is the Plaintiff entitled to?
 Did Defendant, Spectrum Dyed Yarns, commit fraudulent misrepresentations at the initial hearing of this matter?
 If so, what, if any, sanctions should be ordered against Defendant, Spectrum Dyed Yarns?
7. The Defendants contend the issues herein are the sole issues for determination by the Full Commission in the above captioned matter:
 (a) Whether Plaintiff's claim is barred by the provisions of N.C. Gen. Stat. § 97-57 or N.C. Gen. Stat. § 97-58?
 (b) Whether Plaintiff's claim is barred by the applicable statute of limitations and repose?
 (c) Whether Plaintiff has offered sufficient evidence to conclude that he has asbestosis?
 (d) Whether Plaintiff has offered sufficient evidence to show that he has had a requisite exposure to asbestos such as to cause asbestosis?
 (e) Whether Plaintiff developed an occupational disease in connection with his employment with Carolina Throwing Company?
 (f) When was Plaintiff's last injurious exposure to the hazards of asbestos, if any?
 (g) Whether Plaintiff has offered sufficient evidence to conclude that he has any disability and if so, the extent of such disability?
Whether Plaintiff has offered sufficient evidence to conclude that his claim would be subject to the benefits provided by N.C. Gen. Stat. §97-61, et seq.?
Whether Plaintiff has offered sufficient evidence to conclude that he has met the prerequisites to establish a jurisdictional claim for an occupational disease under the provisions of N.C. Gen. Stat. § 97-52?
Whether Plaintiff's attempt to apply the provisions of N.C. Gen. Stat. § 97-61, et seq., is unconstitutional, in violation of the guaranties of equal protection under the law?
What is Plaintiff's correct average weekly wage and compensation rate?
Who was the carrier on the risk at the time of Plaintiff's last injurious exposure, if any?
Whether Defendants are entitled to a credit against any compensation the Commission awards in this case for payments, any allegedly liable third party paid to, or on behalf of, Plaintiff?
8. The January 30, 1997 deposition of Dr. D. Allen Hayes, the February 14, 1997 deposition of Dr. Douglas G. Kelling, and the depositions of Doyle Black, Howard Jones, and Helen Wells are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was sixty-eight (68) years old at the time of Deputy Commissioner Hall's hearing in this matter. Plaintiff completed the 10th grade and later received a GED. Plaintiff has also taken some college classes, but has not received any degree.
2. Plaintiff was regularly exposed to asbestos in several earlier employments. From 1954 until 1955, plaintiff was employed as a kiln operator at Lithium Corporation in Bessemer City, North Carolina, where he was exposed to asbestos and asbestos dust on a daily basis. From 1956 through 1959, plaintiff was employed by Guy M. Beatty as a warehouseman. Plaintiff was responsible for loading and unloading trucks and boxcars that contained asbestos and asbestos insulation products. Plaintiff was exposed on a daily basis to large amounts of asbestos fiber and asbestos dust while in that employment.
3. Plaintiff was employed briefly as a life insurance salesman from 1959 to 1960. From 1960 through 1969, with the exception of an eight-month period in 1966, plaintiff was employed as a truck driver. From April 1973 until March 1976, plaintiff was employed as a supervisor in the texturizing department at Carolina Throwing Company in Kings Mountain, North Carolina. From April 1976 until December 1978, plaintiff was employed as a supervisor in the winding department at Spectrum Dyed Yarns. From 1979 to 1983, plaintiff was a manager for MJ Financial with responsibility for managing property not on leases and preparing the property to be leased. From 1983 until 1989, plaintiff was again employed as a truck driver and later as a manager.
4. Plaintiff worked for Carolina Throwing Company from April 1973 until March 1976. The company was a texturizing plant that manufactured polyester yarn. Plaintiff was a third shift supervisor in the texturizing department, which had 50 to 60 machines. Each texturizing machine had heater blocks that were several feet wide and about 20 feet long. Each of the heater blocks was covered with asbestos insulation. If the heater block overheated, it would burn the yarn. Carolina Throwing Company experienced great difficulties with the heater blocks as all of the texturizing machines were old and in poor condition.
5. Part of plaintiff's job as a supervisor was to ensure adequate production. Just about every night there were problems with one or more of the heater blocks on some of the texturizing machines. When there was a problem with the heater blocks, plaintiff would get a maintenance man to work on the machine to get it up and running again. Plaintiff frequently removed the asbestos insulation. Even when plaintiff did not directly remove the asbestos, plaintiff was helping when the maintenance man removed the asbestos.
6. In order to work on the heater blocks, asbestos insulation had to be removed. Often the asbestos insulation had been heated so much that when it was taken off, the asbestos insulation would just fall apart. Large amounts of dust were created from removing and installing the asbestos insulation when working on heater blocks. The insulation that was used on the heater blocks was both Kaylo and Johns Manville insulation. Plaintiff knew that this insulation was asbestos because the boxes that the insulation came in indicated that they contained asbestos. Further, plaintiff worked with these same materials while employed by Guy M. Beatty so he was familiar with this type of insulation.
7. Plaintiff worked at Spectrum Fibers from 1976 until 1978. During this time, he was third shift supervisor in the winding room.
8. An asbestos survey performed by Cooper Environmental confirms that the Spectrum plant was full of asbestos insulation. Although plaintiff worked in the winding room, he had to go to the dye house several times each night. According to the Cooper Environmental report, and the Full Commission so finds, the linoleum in the office of the dye house contained 25% chrysotile asbestos, the tile floor in the dye house control room was 3% chrysotile asbestos, and the red linoleum in the rear office of the dye house was 39% chrysotile asbestos.
9. Plaintiff also went into the dye house basement two to three times every week. A friend of his worked in the dye house basement and plaintiff went there to visit him. The dye house basement, according to the Cooper Environmental documents, and the Full Commission so finds, contained friable asbestos insulation. The insulation on the main steam line in the dye house basement was 8% amosite asbestos and on another steam line was 30% chrysotile asbestos. The insulation on the main condensate line in the dye house basement was 18% amosite asbestos and insulation on the 12-inch line on the floor level in the dye house basement was 22% amosite asbestos. Cooper Environmental also found asbestos-containing cal-cell debris on top of the electrical panels in the basement storage room where it had fallen off overhead steam lines.
10. Plaintiff frequently had to go to the yarn preparation room to talk to the supervisor if there were any problems with the yarn. The insulation on the condensate line in the yarn preparation room was 15% amosite and the insulation on the steam line in the yarn preparation room had a trace amount of chrysotile asbestos insulation. The insulation on the condensate line and steam line in the yarn preparation room were noted to be friable and have localized damage.
11. Plaintiff also went to the boiler room on frequent occasions. The maintenance man on third shift would often be in the boiler room and plaintiff went there to find him to work on the machinery in the winding department. The information in the Cooper Environmental report indicates, and the Full Commission so finds, that the insulation on Tank 1 in the boiler room was 15% chrysotile and 20% amosite asbestos. The insulation on the header pipes from the manifold in the boiler room was 32% amosite asbestos. The insulation on the pipeline below Tank 2 in the boiler room was 18% amosite asbestos. The Cooper Environmental report noted that these areas of insulation were friable and had localized damage. Plaintiff was in the vicinity of these pipes each and every time he went into the boiler room.
12. When Dr. Kelling first examined plaintiff on February 8, 1994, he determined that plaintiff had extensive pleural plaques and a mass in his right lung. However, there was not evidence of asbestosis at that time.
13. As a result of the mass on his lung, plaintiff was referred to Dr. Ralph S. Christy. A needle biopsy was attempted on March 8, 1994 to determine if the mass was malignant. The needle biopsy was unsuccessful. The pleural plaque was so hard that it could not be transversed with an 18 gauge spinal needle.
14. Due to his extensive pleural plaguing caused by asbestos exposure and the resulting failure of the needle biopsy, a more extensive and invasive surgery was performed. On March 23, 1994, Dr. Christy performed a right thoracotomy with excisional biopsy of mass from right lower lobe and excision of pleural plague and a bronchoscopy. The mass was benign.
15. Specimens of plaintiff's lungs were sent to Dr. Steven H. Dikman at Mount Sinai Medical Center. The comments in Dr. Dikman's November 21, 1994 opinion letter indicate that multiple observers noted chest x-ray changes of asbestos associated plaquing which was confirmed by the thoracotomy procedure and subsequent microscopic examination of the plaintiff's lung tissue. The histological examination of the lung tissue documented the presence of pulmonary asbestosis by the finding of mild diffuse pulmonary interstitial fibrosis accompanied by asbestos bodies. Upon reviewing the lung specimens, Dr. Dikman provided the following diagnosis and the Full Commission so finds:
 "It is my opinion, with a reasonable degree of medical certainty that Mr. Patterson has both pulmonary asbestosis and pleural disease caused by occupational exposure to asbestos."
16. After reviewing Dr. Dikman's pathology report, Dr. Kelling provided the following opinion and the Full Commission so finds:
 "I feel that Mr. Patterson does have both pulmonary asbestosis and pleural disease caused by occupational exposure to asbestos."
17. Plaintiff was seen by Dr. D. Allen Hayes for an advisory medical panel examination. Dr. Hayes opined, and the Full Commission so finds, "I agree with Dr. Kelling and I agree with the pathologist, there is pathologic evidence of asbestosis there. And that is in my view a better diagnosis."
18. Dr. Kelling is of the opinion, and the Commission so finds, that plaintiff is totally and permanently impaired and his disability is proximately caused by his asbestos exposure.
19. Dr. D. Allen Hayes is of the opinion that the plaintiff has a 20% impairment based upon his pulmonary function test results.
20. Dr. Kelling's opinion is more credible and carries greater weight than Dr. Hayes. Dr. Hayes had seen plaintiff once for about thirty to forty-five minutes; whereas Dr. Kelling is plaintiff's treating physician and has seen him at least nine times over a period of several years.
21. Plaintiff has significant functional limitations. Plaintiff testified that he used to golf with his sons but can no longer do so because of his disability. Plaintiff also used to go bass fishing but his lung condition no longer permits this.
22. Much of plaintiff's work history involved driving trucks. Plaintiff can no longer do so due to the exertion of shifting of gears, climbing in and out of the truck, and the rough rides associated with large trucks. Even riding a riding lawn mower causes pain in plaintiff's side.
23. Plaintiff currently owns some trucks which he testified were purchased as an investment starting in January 2001. Plaintiff said trucking and textiles were the businesses he knew about from his experience, but the textile industries were in decline. The testimony was undisputed that plaintiff made no income off this investment. Plaintiff does not drive or manage these trucks and thus, he does not have any "employment" from the trucks.
24. Heat and humidity make it much more difficult for plaintiff to move around. Plaintiff has great difficulty walking up an incline and can only walk up one flight of stairs if he goes slowly.
25. Plaintiff is in pain all of the time. If plaintiff tries to push himself and overdo things, it creates much more pain for him. During these times, plaintiff has a great deal of difficulty sleeping because of his continuing pain.
26. Plaintiff testified that he did not think he could do sedentary office work as part of a regular job, because he did not think he could maintain a consistent schedule and keep up with the demands of the job day in and day out.
27. Plaintiff is incapable, due to his asbestosis and complications of his asbestos related surgery, of earning the same wages he earned before his injury in the same or any other occupation.
28. Plaintiff's incapacity to earn is caused by his asbestosis. Considering plaintiff's age, education, work experience and health, such incapacity is continuing in nature and plaintiff is totally and permanently disabled and has been so since March 23, 1994.
29. During his employment with both defendants, plaintiff was never given any respiratory protection.
30. During his employment with both defendants, plaintiff was never warned about the presence of asbestos or given any training about how to work around asbestos. Defendants' witnesses, who testified at the initial hearing and at the subsequent hearing, corroborate plaintiff's testimony that they were not warned about the presence of or hazards related to asbestos.
31. Plaintiff testified about asbestos exposure at Carolina Throwing Company at the hearing of this matter. No evidence was introduced to contradict plaintiff's testimony that he was exposed to asbestos. Plaintiff's testimony regarding asbestos exposure at Carolina Throwing Company is found credible and convincing.
32. At the hearing before the deputy commissioner, plaintiff testified about exposure at Spectrum Dyed Yarns. Plaintiff's testimony was confirmed and corroborated by the Cooper Environmental study on asbestos at the Spectrum plant. This defendant provided witnesses who testified that they were not aware of asbestos in the plant and had not been told about asbestos in the plant. Ms. Wells worked a different shift than plaintiff and could not testify to what areas of the plant plaintiff may have visited during his shift. Mr. Black also testified that he did not know what plaintiff's specific job entailed or what plaintiff did on a day-to-day basis. Therefore, the testimony of Ms. Wells and Mr. Black concerning where plaintiff worked in the plant is found to be neither credible nor convincing.
33. While working for both defendants, plaintiff was exposed to the hazards of asbestos for more than thirty working days or parts thereof over seven months.
34. Plaintiff was last injuriously exposed to the hazards of asbestos while employed by defendant, Spectrum Dyed Yarns.
35. Plaintiff has asbestosis, which is a characteristic fibrotic condition of the lungs caused by the inhalation of asbestos fibers. Plaintiff also has extensive pleural disease caused by asbestos exposure.
36. In the 52 weeks of his last full-time employment, plaintiff earned a salary of $26,594.28, which yields an average weekly wage of $511.43 and a weekly compensation rate of $341.12.
37. The first four preferred methodologies used to calculate average weekly wage under N.C. Gen. Stat. § 97-2(5) would not be fair to the parties. Disability and thus earnings under N.C. Gen. Stat. § 97-31
are conclusively presumed lost, whether actually earned or not. The best evidence of those earnings conclusively presumed lost from those suffering from asbestosis and silicosis is the earnings in the last full year of employment. The fifth methodology under N.C. Gen. Stat. §97-2(5) is for exceptional reasons involved for purposes of calculating average weekly wages for those diagnosed post full-time employment as having asbestosis or silicosis. This method is fair and just to the parties.
38. Plaintiff's compensation rate for the purpose of an award under N.C. Gen. Stat. § 97-29 is $341.12.
39. On February 6, 1996, defendant, Spectrum Dyed Yarns, served verified answers to written interrogatories indicating that there was asbestos on the pipes in the winding room at the Spectrum plant. Also on February 6, 1996, defendant, Spectrum Dyed Yarns, served verified Responses to Plaintiff's Request for Production of Documents. Said request asked for all documents relating to asbestos at the Spectrum plant. Defendant did not provide any documents in its response.
40. In May 1996, Spectrum employed Cooper Environmental to perform an asbestos survey of its King Mountain, North Carolina plant. The Cooper Environmental survey showed there was asbestos throughout the Spectrum plant.
41. The defendant, Spectrum Dyed Yarns, did not supplement its Answers to Interrogatories or Request for Production of Documents at any time prior to the initial hearing before Deputy Commissioner Kim L. Cramer on December 9, 1996 and did not produce the Cooper Environmental report. It was not until April 3, 2002, subsequent to the May 25, 1999 Full Commission order sanctioning Spectrum Dyed Yarns for failing to seasonably supplement discovery responses and after the filing of a Motion to Compel, that plaintiff first received the Cooper Environmental report. At no time has Spectrum Dyed Yarns ever provided plaintiff with any documents related to the asbestos removals performed by Western Asbestos. Plaintiff's investigation located these documents in Raleigh, North Carolina, as asbestos removal permits are required to be filed with the State.
42. At the initial hearing, Howard Jones testified about the Cooper Environmental report over the objection of plaintiff. However, the report itself was never introduced or provided to either the plaintiff or the Commission. In his testimony, Mr. Jones testified that based upon the Cooper Environmental report, the insulation in the winding room that he thought contained asbestos was non-asbestos containing. Mr. Jones failed to convey the fact that the report showed that asbestos was located in many other parts of the plant.
43. At the initial hearing, Tom McAllister also testified. Mr. McAllister stated that based upon an article he saw at a meeting at Spectrum Dyed Yarns, the insulation was non-asbestos containing calcite.
44. Also testifying at the initial hearing were Helen Wells, Lindsey McBride and Doyle Black. Their testimony was that they were not aware of the types of insulation at the plant.
45. Based upon the testimony of Spectrum Dyed Yarns witnesses, Deputy Commissioner Kim L. Cramer found as a fact that there was no asbestos at the Spectrum Dyed Yarns plant. Based upon the Cooper Environmental report introduced at the second hearing, that finding of fact was incorrect.
46. At the initial hearing, Mr. Jones also testified that he would "absolutely" know of any asbestos removals at the Spectrum Dyed Yarns plant and that there had been "none whatsoever." The initial hearing was on December 9, 1996. On December 10, 1996, the very next day, Western Asbestos, Inc. was scheduled and came to the Spectrum Dyed Yarns plant in order to prepare for asbestos removal at the plant.
47. At the second hearing, Helen Wells and Mr. Black testified that they came to the initial hearing without even being told that the case concerned asbestos. Further, neither Ms. Wells nor Mr. Black was provided any information by Spectrum Dyed Yarns about the Cooper Environmental report or the presence of asbestos at the plant.
48. At the initial hearing, Mr. McAllister testified that the insulation at the plant was non-asbestos containing calcite. At the second hearing, Mr. McAllister testified that before the first hearing he was shown only part of the Cooper Environmental report that said the calcite in the winding room did not contain asbestos. Mr. McAllister was not shown the rest of the report that showed the calcite in all other parts of the plant did contain asbestos or that there was asbestos all over the plant.
49. Although Mr. Jones testified about the Cooper Environmental report at the initial hearing, at the second hearing he testified that he had not seen the entire report prior to the first hearing. Spectrum Dyed Yarns told him about small parts of the report, but did not inform him that the plant contained large amounts of asbestos.
50. Spectrum Dyed Yarns has offered no evidence to explain any reasonable basis for not providing the Cooper Environmental report to the Commission and the plaintiff in a timely manner.
51. Plaintiff's reasonable attorney's fees in this action are twenty-five percent (25%) of benefits awarded to plaintiff. Plaintiff's counsel of record has provided valuable services including the investigation and preparation of this matter, handling the appeal to the Full Commission, and conducting two trials of this action over a period of five years and eight months. An attorney's fee award of 25% of the award is fair and reasonable in light of the time plaintiff's counsel has spent to litigate this case, as well as the number of hearings required, and the extensive investigation and discovery required to obtain information concealed from the Commission and plaintiff by defendant, Spectrum Dyed Yarns.
52. A reasonable penalty for the failure of Spectrum Dyed Yarns to supplement discovery even after being sanctioned by the Full Commission order filed May 25, 1999 is $25,000.00. This amount is fair and reasonable under the facts of this case. Defendant Spectrum Dyed Yarns' actions resulted in the denial of medical and compensatory benefits to plaintiff for over four and one half years.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational disease of asbestosis while in the employment of defendant, Spectrum Dyed Yarns. N.C. Gen. Stat. §§ 97-53(24), 97-62.
2. Plaintiff was exposed to the hazards of asbestos for more than thirty days within a seven consecutive month period while employed by the defendant, Spectrum Dyed Yarns. Plaintiff was in the employment of the defendant, Spectrum Dyed Yarns, when he was last injuriously exposed to the hazards of asbestos. Plaintiff's exposure to the hazards of asbestos while employed by defendant, Spectrum Dyed Yarns, proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Hayes v. Feldspar ProducingCo., 222 N.C. 163, 22 S.E.2d 275 (1942); Barber v. Babcock WilcoxConstructing Co., 101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. Asbestosis and silicosis cases are given exceptional treatment because of the progressive, insidious, and incurable nature of those diseases and the long latency period associated with asbestosis and silicosis. Honeycutt v. Asbestos Co., 235 N.C. 471, 70 S.E.2d 426
(1952); Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
4. Considering all the factors at issue in this case, an appropriate basis for determining a fair and just average weekly wage for plaintiff is to calculate benefits based on the wages last earned by plaintiff in his last full-time employment. N.C. Gen. Stat. § 97-2(5).
5. Having contracted asbestosis, plaintiff is entitled to weekly compensation at the rate of $341.12 beginning at the onset of his disability on March 23, 1994 and continuing for the remainder of his life because of his asbestosis. N.C. Gen. Stat. §§ 97-2(5); 97-29.
6. Plaintiff is entitled to payment of all reasonable medical expenses that have been or may be incurred as a result of his development of the occupational disease asbestosis. N.C. Gen. Stat. § 97-59.
7. A reasonable penalty for the failure of Spectrum Dyed Yarns to supplement discovery even after being sanctioned by the Full Commission order filed May 25, 1999 is $25,000.00. Rule 802; NCIC; E.g. Willie ScottDixon, Employee-Plaintiff v. SKF Rawhide Industries,Employer-Defendant, Willis-Corron, Servicing Agent, Defendant (I.C. File No. 576066, 1998) ($500.00 for failure to respond to Industrial Commission Form 18); Beatrice Woody, Employee-Plaintiff v. ThomasvilleUpholstery, Inc. Employer, Self-Insured (Helsman-Management Services,Inc., Servicing Agent), Defendant. (I.C. File No. 601626, 2000) ($2,585.00 paid in attorney's fees as penalty for violation of discovery order); I.C. File No. 607231. Bharat Shah, Employee-Plaintiff v. HowardJohnson, Employer, Self-Insured (Key Risk Management Services, ServicingAgent), Defendant. (I.C. File No. 607231, 1999) ($2,500.00 penalty for failure to file proper North Carolina Industrial Commission forms with no allegation of fraud). Holley, Employee-Plaintiff v. EASCO Aluminum,Employer-Defendant (Gallagher-Bassett, Servicing Agent), Defendant. (I.C. File No. 578379--$10,000.00 penalty for fraudulent Industrial Commission Form 28B).
8. Plaintiff's counsel of record has provided valuable legal services and a fair and reasonable attorney's fee is twenty-five percent (25%) of any disability benefits awarded to plaintiff. N.C. Gen. Stat. § 97-90.
9. Defendant Spectrum Dyed Yarns appealed Deputy Commissioner Hall's Opinion and Award, which opinion is being affirmed by the Full Commission; therefore, plaintiff is entitled to have defendants taxed with attorneys' fees for costs incurred in defending this appeal. The evidentiary record of this case does not currently contain the requisite information necessary to determine an appropriate attorney's fee award for such costs; consequently, the Full Commission reserves this issue for later ruling. N.C. Gen. Stat. § 97-88.
10. Plaintiff is entitled to receive awarded compensation benefits that are not appealed from during the pendency of any appeals of this matter to the North Carolina Court of Appeals. N.C. Gen. Stat. § 97-86.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission MODIFIES and AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants, Spectrum Dyed Yarns and Wausau Insurance, shall pay to plaintiff for his compensable occupational disease, permanent and total disability compensation in the amount of $341.12 per week, from the date of disability, beginning March 23, 1994, and continuing for the remainder of his life. Such amounts as have accrued shall be paid in one lump sum.
2. Defendants, Spectrum Dyed Yarns and Wausau Insurance, shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational disease.
3. In addition to the disability benefits awarded, defendants shall pay plaintiff's counsel a reasonable attorney's fee in the amount of 25% of disability benefits awarded. Defendants shall pay plaintiff's counsel in one lump sum for the attorney's fee to the date of this Award and, thereafter, shall pay an attorney's fee every fourth week so long as plaintiff receives disability benefits pursuant to this Award. Defendants are entitled to a credit of $1,500.00 towards attorney fees owed to plaintiff's counsel as set out in the Full Commission's interlocutory order filed May 25, 1999. Said attorney's fees are to be paid directly by defendants and are not to be deducted from the sums awarded to plaintiff.
4. Defendants shall pay to plaintiff's counsel attorney's fees for costs incurred in defending this appeal in an amount to be determined and ordered by the Full Commission upon plaintiff's counsel's submission of a statement of expenses in pursuing this appeal. Plaintiff's counsel shall submit said expense statement to the Full Commission within thirty days of receipt of this Award.
5. Defendants shall pay within thirty days of the date of this Award a penalty of Twenty-Five Thousand Dollars and No/100 ($25,000.00) to the Commission for failure of Spectrum Dyed Yarns to seasonably supplement discovery even after being sanctioned in the Full Commission order filed May 25, 1999. Defendants shall make the check payable to the North Carolina Industrial Commission and direct the payment to Ms. Kay Emanuel at the Commission's mailing address.
6. Defendants shall comply with all portions of this Award granting plaintiff benefits that are not appealed from during the pendency of any appeals of this matter to the North Carolina Court of Appeals.
7. Defendants, Spectrum Dyed Yarns and Wausau Insurance shall pay the costs due the Commission.
This the ___ day of May 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER