***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. The employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its Plymouth facility from 8 March 1967 until 11 March 1998.
4. Plaintiff was last injuriously exposed to asbestos during his employment with defendant, Weyerhauser Company, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven-month period, as is required by N.C. Gen. Stat. § 97-57.
5. Following the hearing, defendant stipulated that plaintiff does suffer from an occupational disease, asbestosis; further, that he was diagnosed with asbestosis on 9 December 1997, by Dr. Dennis Darcey. Defendant further stipulates that a Member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records will be stipulated into evidence for consideration by the undersigned.
6. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
7. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant agreed that should the claim be found compensable, defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure to N.C. Gen. Stat. § 97-62-5(b).
9. The parties further agree that should the undersigned determine N.C. Gen. Stat. § 97-60 through § 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The following medical records were received into evidence:
a. Dr. Dennis Darcey,
b. Dr. Fred M. Dula,
c. Dr. James Johnson,
d. Dr. Phillip Lucas,
e. Dr. Clinton D. Young,
f. Dr. James A. Merchant, and
g. Dr. Allen Hayes.
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Industrial Commission after plaintiff's first examination and medical reports establishing that he has asbestosis.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1967 until 11 March 1998.
4. Plaintiff actively worked for defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from 8 March 1967 until 11 March 1998. Plaintiff has been disabled from work since 11 March 1998 due to a work-related injury to his back. Despite the stipulated dates of employment, plaintiff continued to be employed at defendant's facility in Plymouth through the date of the hearing before Deputy Commissioner Berger and up to at least the date of the closing of the evidentiary record.
5. Weyerhauser manufactures paper, pulp, and paper products. Plaintiff has held several different job positions during his 32 years of employment at the Plymouth facility. He worked for several years as a mechanic on the recovery boilers, which are used to cook the wood pulp. Plaintiff also worked on the large paper machines. He was exposed to asbestos dust and fibers throughout his employment.
6. Plaintiff was initially exposed to asbestos dust in the boiler room where the boilers and the pipes were wrapped in asbestos insulation and kept in place by chicken wire. He was also exposed to asbestos dust when employees or work crews would come in and work directly on the insulation covering pipes and boilers. Compressed air was used to blow asbestos dust off the pipes and boilers, creating clouds of circulating asbestos dust.
7. Plaintiff was further exposed to asbestos while working as a mechanic on the paper machines, as the big clutches on the paper machines were made of asbestos. Plaintiff would use an air hose to blow down the clutches and to clean off brake disks. He would also grind off asbestos gaskets when they stuck to pipes.
8. Plaintiff was not provided a respirator to protect against his exposure from asbestos dust in the workplace.
9. Plaintiff has never smoked cigarettes.
10. Defendant has admitted plaintiff does suffer from asbestosis, an occupational disease. This diagnosis has been confirmed through medical documentation from Dennis Darcey, M.D., Fred M. Dula, M.D., Phillip H. Lucas, M.D., Allen Hayes, M.D., James Johnson, M.D., James A. Merchant, M.D., and Clinton D. Young, M.D.,
11. Plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine at Duke University on 10 December 1997. Dr. Darcey took an occupational history from plaintiff. Plaintiff stated that he had worked for Weyerhauser since 1967 and was currently employed there at that time as a senior mechanic. Plaintiff gave a history in which he stated that over the course of his employment, he was exposed to asbestos dust from insulation materials and from exposure to asbestos dust while working as a millwright and mechanic. Plaintiff reported that his job duties required him to occasionally remove asbestos insulation materials, use an air hose to blow asbestos dust and other particles from equipment including pipes and boilers, and to grind asbestos gaskets from equipment. Plaintiff also reported that he was a non-smoker.
12. It was the opinion of Dr. Darcey that plaintiff's symptoms are consistent with parenchymal lung disease associated with asbestosis. His conclusion was based on plaintiff's history of exposure to asbestos with adequate latency to develop asbestosis, an ILO chest x-ray and B-read, a high resolution CT scan of the chest showing mild interstitial changes and mild bilateral pleural thickening consistent with asbestos exposure, and a pulmonary function test that showed mild reduction in diffusion capacity and mild hypoxemia.
13. Dr. Darcey, as part of his medical report, recommended that plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. He further recommended that plaintiff avoid further exposure to asbestos dust. Dr. Darcey also noted that plaintiff has an increased risk of developing lung cancer and mesothelioma.
14. A CT scan and chest x-ray dated 25 July 1997, was interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was Dr. Dula's opinion that there were interstitial changes seen in both lungs including short, thickened interlobar lines extending to the pleural surfaces in the non-dependent areas of the lower lobes bilaterally. In addition, there was mild diffuse-type pleural thickening in some areas, more evident on the CT scan than on plain film. Dr. Dula was of the opinion that plaintiff had interstitial changes and mild pleural thickening consistent with asbestosis in the appropriate clinical setting. In addition, Dr. Dula interpreted a repeat CT scan and chest x-ray which were performed on 1 October 1999. Dr. Dula's overall impression was that the findings were consistent with mild asbestosis which had not progressed.
15. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated plaintiff's 24 July 1997 chest film that there were bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
16. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed plaintiff's 25 July 1997 chest film, and indicated thereon that there were parenchymal abnormalities consistent with pneumoconiosis present.
17. Dr. James Johnson of Piedmont Radiology in Salisbury, a B-reader, reviewed plaintiff's 25 July 1997 chest x-ray and concluded there were parenchymal changes present consistent with a pneumoconiosis.
18. Dr. James A. Merchant of the University of Iowa, Ph.D. and a B-reader, also reviewed plaintiff's 1 October 1999 chest x-ray and CT and concluded that there were parenchymal changes suggestive of pneumoconiosis. In addition, he noted that the findings on the CT were consistent with asbestosis and bilateral pleural plaques.
19. On 1 January 1999, plaintiff was examined by Dr. Clinton D. Young, a Member of the North Carolina Occupational Disease Panel. Plaintiff advised Dr. Young that he has never smoked. He also stated that he worked his whole career at Weyerhaeuser starting 32 years ago. During the first two years, plaintiff was in the boiler room where he believes he was exposed to asbestos dust from ducts which were covered with asbestos. The ducts would rust out and in order to repair them, plaintiff was required to tear the asbestos off. The tearing of asbestos from the ducts exposed plaintiff to clouds of heavy asbestos dust of a frequent basis. Plaintiff stated that sometimes the dust was heavy enough that he couldn't breathe. Plaintiff's job also required him to remove asbestos covered pipes from pumps. He also reported to Dr. Young that he worked for several years on the paper machines where he would change the clutch disks and use an air hose to blow off dust from what he understands was asbestos on these disks. In addition, the hoods and pipe covers to which plaintiff was regularly exposed were insulated with asbestos. Also, plaintiff changed pumps and gearboxes covered with asbestos dust.
20. Dr. Young examined plaintiff, the chest x-ray films which were taken in his own office, and the medical records which were provided by the parties. Based upon plaintiff's occupational exposure to asbestos, his exam, the interstitial changes on chest x-ray and CT scan together with restrictive abnormality on pulmonary function testing, it was Dr. Young's conclusion that plaintiff suffers from restrictive lung disease with interstitial changes consistent with pulmonary asbestosis. He noted in his medical report that plaintiff will need ongoing supervision by his physician with attention to the long-term risk of progressive lung disease and development of malignancy. He also noted that plaintiff should not work again in an environment where he could be exposed to asbestos without full, standard protective measures.
21. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of injurious exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to plaintiff's increased risk of developing lung and other asbestos related cancers.
22. Although plaintiff is currently not working for defendant due to an unrelated job-related injury, there is no evidence in the record to support a finding that plaintiff has retired from employment or that he is permanently and totally disabled from work due to his back injury. Based upon the evidence of record, the Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5
to ensure that should plaintiff become able to return to his employment with defendant or some other employment, he is ordered removed from any occupation which would further expose him to the hazards of asbestos for the remainder of his employment.
23. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $588.00 during the year 2000, in which the Deputy Commissioner ordered plaintiff's removal from asbestos exposing employment.
24. The provisions of N.C. Gen. Stat. §§ 97-60 et seq. are not unconstitutional.
25. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from any opportunity to return to his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment should he return to work.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff has not retired and may return to defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v.Southeastern Magnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742
(1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina AsbestosCo., 235 N.C. 471, 70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, the year the Deputy Commissioner issued the Order of Removal. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $588.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. §§ 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of October, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER