***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence and modify and affirm the Opinion and Award. Accordingly, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Glenn.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured at all relevant times herein.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from August 6, 1973, to the present.
4. Plaintiff was last injuriously exposed to asbestos during the plaintiff's employment with defendant and specifically, plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as is required by N.C. Gen. Statute § 97-57.
5. Subsequent to the prior hearing before Deputy Commissioner Glenn, the defendant stipulated that plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on May 29, 1998, by Dr. Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records will be stipulated into evidence for consideration by the undersigned.
6. It is stipulated that defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. Steam producing boilers are used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes, which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. Plaintiff has worked for defendant doing all types of maintenance work as a pipe fitter, welder, and millwright. During his first year working for the defendant, plaintiff ran a paper machine and was exposed to asbestos from the clutches and brakes on the paper machines, which were composed of asbestos. Plaintiff also worked in areas where pipes and boilers were repaired and asbestos insulation was removed. The conditions he worked in were extremely dusty and he did not routinely wear any respiratory equipment.
8. Plaintiff's income for the fifty-two (52) weeks prior to his diagnosis on May 29, 1998, was $91,513.50, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year, which is $532.00. By separate stipulation signed by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
9. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Statute § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
10. The parties agreed further that should plaintiff be awarded compensation, the Industrial Commission may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. §97-62-5(b).
11. The parties further agreed that should the Industrial Commission determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
12. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Statute §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 B. What benefits, monetary and/or medical, is plaintiff entitled to receive, if any?
13. The parties submitted for consideration by the undersigned the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Fred Dula
c. Dr. L.C. Rao
d. Dr. Phillip Lucas
e. Dr. Albert Curseen
f. Dr. Michael J. DiMeo
g. Dr. Michael Weaver
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from August 6, 1973, to the date of the hearing before the Deputy Commissioner and continuing.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. Steam producing boilers are used at the facility. In addition, there are hundreds of miles of steam pipes, which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff has worked for defendant doing all types of maintenance work as a pipe fitter, welder, and millwright. During his first year working for the defendant, plaintiff ran a paper machine and was exposed to asbestos from the clutches and brakes on the paper machines, which were composed of asbestos. Plaintiff also worked in areas where pipes and boilers were being repaired and asbestos insulation was removed. The conditions he worked in were extremely dusty and he did not routinely wear any respiratory equipment. He inhaled asbestos dust.
4. Plaintiff was exposed to asbestos containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1973 to the date of the hearing before the Deputy Commissioner.
5. The following medical records confirming the diagnosis of asbestosis were submitted for review of the Industrial Commission by counsel for the parties:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University dated May 29, 1998. Dr. Darcey took an occupational history from plaintiff. Plaintiff was exposed to asbestos dust while employed at the Weyerhaeuser Paper Company in Plymouth, North Carolina. Plaintiff worked in all types of maintenance, including having worked as a welder, pipe fitter, and millwright. He believes sources of asbestos exposure came from the paper machine clutches and brakes, which were composed of asbestos. He also worked in areas where pipes and boilers were repaired and asbestos insulation was removed. Although he did not directly do the removal work, he was exposed as a bystander working in the same area as the removal crews. He did not routinely wear a respirator.
 B. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff has a clinical diagnosis of asbestosis based on his history as a bystander exposed to asbestos with adequate latency to develop asbestosis and an ILO chest x-ray B-read showing interstitial changes consistent with asbestosis.
 C. Dr. Darcey, as part of his report, recommended that plaintiff undergo periodic monitoring for progression of asbestos related disease, including pulmonary function and chest x-ray, because further deterioration in pulmonary function can occur even after exposure has ceased. He further recommended that plaintiff should avoid further exposure to asbestos dust. Finally, plaintiff is at some minimal increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, compared to non-exposed individuals.
 D. A CT scan and chest x-ray report dated October 25, 1997, interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. He reports no significant changes on the CT scan. On the chest x-ray, he reports interstitial changes in the lower two-thirds of both lungs, consisting of irregular linear opacities, more evident on plain film than on CT in this patient.
 E. A CT scan and chest x-ray report dated October 29, 1999, also interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. He reports a mild ground-glass appearance to the lung parenchyma on the CT scan. On the chest x-ray, he reports interstitial changes in the middle and lower lung zones on both sides, consisting of irregular linear opacities that are definitely more evident than on the CT. It is his overall impression, and the Full Commission finds, that there are interstitial changes in a distribution that would be consistent with asbestosis.
 F. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the chest x-ray dated October 29, 1999. He reports irregular opacities present in the lower, middle, and upper lung zones bilaterally of category s/t with 2/1 profusion. It was Dr. Rao's overall conclusion, and the Full Commission finds as fact, that with a significant exposure history to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis.
 G. Dr. Phillip H. Lucas, a radiologist and NIOSH B-reader, reviewed the chest x-ray and CT scan dated October 25, 1997. On the chest x-ray, he reported irregular interstitial opacities observed throughout both lungs, the size and shape of which are classified as s/t and the profusion is 1/1. On the CT scan, he reported fine interstitial opacities distributed throughout both lungs, consistent with pneumoconiosis such as asbestosis. It is his overall opinion and the Full Commission finds that there are changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
 H. Dr. Michael Weaver, a B-reader at Eastern Radiologists in Greenville, reviewed several older chest x-rays dated October 9, 1989; January 23, 1991; March 5, 1992; and February 22, 1994. On all four B-read reports of these chest x-rays, he reported parenchymal abnormalities consistent with pneumoconiosis in the lower and middle lung zones with a profusion of 1/0.
 I. A medical report from Dr. Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders performed pulmonary functions tests on plaintiff on May 18, 1998. His total lung capacity was only 80% of predicted. Dr. Curseen classified plaintiff with a Class 2 Level of AMA Respiratory Impairment, based upon the pulmonary function tests.
 J. An Advisory Medical Evaluation Report written by Dr. Michael J. DiMeo, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on December 16, 1999. Dr. DiMeo took an occupational history of plaintiff, who reported that his first asbestos exposure began when he began working maintenance at Weyerhaeuser. Initially, Plaintiff primarily did pipe fitting in which he would hang pipes but not remove asbestos containing materials, yet he was around people who were ripping off and replacing asbestos with exposure to asbestos dust indirectly. He stated that between 1984 and 1985, they demolished two boilers. They hung "cheese cloth" between the boiler he was working on and the boilers being removed. A large amount of dust passed through the cloth. Much of this dust contained asbestos from the boilers themselves. In addition, he states that they would remove asbestos and use only red tape to demarcate the area where they were working.
 K. Dr. DiMeo conducted a full physical evaluation, performed a pulmonary function test, and reviewed other medical records including chest x-ray and CT scan reports. He reports that the increased interstitial markings are prominent on the frontal view as well as bilateral. He notes that plaintiff has nonspecific interstitial changes in the lower lung zones that appear to have developed in the late 80's about 10 years after his first asbestos exposure.
6. Plaintiff does suffer from asbestosis and asbestos related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
7. Plaintiff's wages for the 52 weeks prior to diagnosis on May 29, 1998 was $91,513.50. Plaintiff's average weekly wage was sufficient to entitle him to the maximum worker's compensation rate of $588.00, the rate of compensation at the time of plaintiff's removal by Order on August 21, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 1998. However, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis and as a result of the Industrial Commission Order of Removal, at the weekly benefit rate of $588.00, the rate of compensation at the time of plaintiff's removal by Order on August 21, 2000. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
9. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant and as a result of the Industrial Commission Order of Removal, at a weekly rate of $588.00, commencing on August 21, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, March, 22, 2000, until paid in full. The interest shall be paid in full to the claimant and is subject to attorneys' fees. N.C. Gen. Stat. §97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the 8th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER