***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant is a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 26 March 1973 to present.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven-month period, as is required by N.C. Gen. Stat. § 97-57.
5. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s, and the vast majority of the insulation used in the original construction of the buildings contained asbestos. There are steam-producing boilers used at the facility. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff first worked as a winder in the paper machine area where he was exposed to asbestos dust from the asbestos containing clutches and brake shoes on the paper winders. When the clutches and brake shoes were repaired, employees used compressed air hoses to clean all the dust off before repairing. Air hoses were also used to clean off equipment as a part of general maintenance work. Plaintiff worked for a short period of time in the storeroom until he was reassigned as a mechanic where he worked directly on the paper machines. He was not only exposed to asbestos from the brake shoes and clutches, but also the turbines that were in the same area. Plaintiff also worked in areas where there were steam pipes wrapped in asbestos insulation. He eventually progressed to the level of senior mechanic where he was responsible for changing asbestos containing valves and gaskets. Plaintiff had little, if any, respiratory protection while he was being exposed to asbestos.
7. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2001, which was $620.00.
8. Plaintiff contends that he is entitled to an award of 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant agreed that should the claim be found compensable, defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
9. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
10. The parties further agreed that should the undersigned determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. The parties submitted for consideration the medical records and reports of plaintiff by the following physicians:
1. Dr. Dennis Darcey.
2. Dr. James C. Johnson.
3. Dr. L.C. Rao.
4. Dr. Richard C. Bernstein.
5. Dr. George Grauel.
6. Dr. Ralph E. Whatley.
13. Subsequent to the hearing before the Deputy Commissioner, the transcripts from the depositions of the following medical experts were submitted for review:
1. Dr. Richard Bernstein [January 18, 2000 and July 27, 2000]
2. Dr. James Johnson [January 24, 2000 and August 24, 2000]
3. Dr. George Grauel [July 10, 2000]
4. Dr. Allen Hayes [February 17, 2000 and November 27, 2000]
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant.
2. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1973 until the present.
3. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 26 March 1973 to present.
4. Plaintiff was examined by Dr. Dennis Darcey on 29 May 1998. Dr. Darcey examined a chest x-ray dated 4 November 1997 and a Chest CT dated 8 November 1997. He found small non-calcified pleural plaques in the upper lung fields bilaterally, but no definitive interstitial disease. Dr. Darcey opined that "the findings from the high resolution chest CT only suggest the presence of plural plaque which could be consistent with asbestos exposure." He further found that plaintiff has a Class 1 respiratory impairment based on the AMA guidelines.
5. Dr. James C. Johnson evaluated a CT scan dated 12 July 1999 and compared it to the 8 November 1997 CT. He found "no definite pleural plaque or calcification in the right or left chest" in the later study, and concluded there was "no definite interstitial or pleural abnormality" on the 12 July 1999 CT scan. Dr. Johnson also compared a lateral chest x-ray taken on 12 July 1999 with the one taken on 4 November 1997. Dr. Johnson found "some very minimal interstitial abnormality consisting of some scattered irregular interstitial opacities in the mid and lower lung fields." He noted that changes were present on the old film, but were more apparent due to the different exposure pattern. He also noted "no pleural abnormality" and "no other acute process."
6. Dr. L.C. Rao reviewed the 12 July 1999 x-ray and found some small bilateral opacities, but no pleural abnormalities consistent with pneumoconiosis and no other abnormalities.
7. Dr. Richard C. Bernstein examined the 12 July 1999 x-ray and found "mild increased interstitial markings throughout both lung fields." He also found that plaintiff's "pleura is normal except a small amount of thickening in the left apex." Dr. Bernstein concluded that the increased interstitial markings, along with the proper exposure, "[are] consistent with mild asbestosis."
8. Dr. George L. Grauel also reviewed the 12 July 1999 x-ray and identified within the mid and lower zones "a fine to medium irregular opacity pattern." He found "no pleural abnormalities," but concluded that the opacity pattern "may be associated with an underlying pneumoconiosis."
9. Dr. Ralph E. Whatley, the Advisory Medical Panel Physician, examined plaintiff on 31 August 1999. He found plaintiff to be "completely asymptomatic," with no respiratory complaints. Dr. Whatley reviewed the B reading by Dr. Johnson which noted the small opacities in both lungs, and he reviewed the CT scan dated 12 July 1999, noting some areas of pleural thickening on both sides in the posterolateral pleural areas which were not calcified. Dr. Whatley opined that plaintiff "likely had significant exposure to asbestos dust during his employment at Weyerhaeuser," and that the CT scan "shows pleural abnormalities." Dr. Whatley concluded that "the occupational exposure to asbestos dust, the long latent period, and the radiographic abnormalities seen on CT scan are consistent with asbestosis."
10. Dr. Allen Hayes reviewed plaintiff's medical records in preparation for his deposition in this case. Dr. Hayes testified that there were radiographic abnormalities consistent with an asbestos causation.
11. Greater weight is given to the medical opinions of Drs. Whatley, Bernstein, Hayes and Grauel on whether plaintiff has asbestosis. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of injurious exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
12. Based upon the evidence of record, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff must be ordered removed from any occupational exposure to asbestos for the remainder of his employment.
13. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $620.00 during the year 2001, in which Deputy Commissioner Garner ordered plaintiff's removal from asbestos exposing employment.
14. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
15. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has been exposed to asbestos; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2001, the year the Deputy Commissioner issued the Order of Removal. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $620.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. § 97-60 etseq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $620.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein. Any other issues in controversy may be determined at the hearing before the Deputy Commissioner.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER